IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN CRAMER,          (01)<br><br>Defendant. | CR. NO. 19-00001 JMS-1<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 78 |

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 78

### I. INTRODUCTION

Before the court is pro se Defendant Stephen Cramer's ("Defendant") Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 78 ("Motion"), based on: (1) rehabilitation; (2) serious medical conditions; (3) cognitive impairment; (4) long-term effects of COVID-19; and (5) family circumstances (primary caregiver to wife).  Defendant fails to demonstrate an extraordinary and compelling reason to reduce his sentence and, in any event, the court would deny the Motion based on a consideration of the relevant 18 U.S.C. § 3553(a) factors.  Accordingly, as set forth below, Defendant's Motion is DENIED.

## II. **BACKGROUND**

Defendant is 39 years old and presently incarcerated at Fort Dix FCI with a projected release date of December 4, 2029. *See* Federal Bureau of Prisons Find an Inmate, https://www.bop.gov/inmateloc/ (entering Bureau of Prisons ("BOP") Register Number "06254-122") (last visited November 1, 2024).

On December 17, 2019, Defendant pled guilty to an Indictment charging him with three counts of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). *See* ECF No. 74 (Judgment). On February 19, 2021, the court sentenced Defendant to concurrent terms of 156 months imprisonment and five years of supervised release. *Id.*[1]

On August 2, 2024, Defendant filed his Motion. ECF No. 78. The government filed an opposition on September 4, 2024. ECF No. 85. The court received Defendant's reply on October 16, 2024. ECF No. 86. The court decides the Motion without a hearing pursuant to Criminal Local Rule 12.2(a)(1).

---

[1] Under the Sentencing Guidelines, Defendant had a total offense level 35 and a criminal history category III, resulting in a Guideline range of 210 to 262 months. *See* ECF No. 75 at PageID.312. After a consideration of all the relevant § 3553(a) factors, including the fact that defendant provided investigators with two firearms and a substance he believed was methamphetamine, the court imposed a total sentence of 156 months imprisonment, well under the Guideline range.

## III. **DISCUSSION**

A.  **Legal Standard**

Ordinarily, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (quoting *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021), and 18 U.S.C. § 3582(c)). Congress created a limited exception for modifying the sentence of a federal inmate who files a motion for "compassionate release" satisfying the substantive and procedural requirements of 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; []
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

"As compassionate release derogates from the principle of finality, it is a 'narrow' remedy . . . and the court's disposition of a compassionate release

3

motion 'is discretionary, not mandatory[.]'" *Wright*, 46 F.4th at 944–45 (internal citations omitted) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011), and *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020)).

But § 3582 itself does not define "extraordinary and compelling reasons." "Instead, Congress stated that the Sentencing Commission, 'in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

United States Sentencing Commission Policy Statement § 1B1.13(a) states, as relevant to Defendant, that a court may grant a motion for compassionate release if, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," the court determines that: extraordinary and compelling reasons warrant the reduction; the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and "the reduction is consistent with [§ 1B1.13's] policy statement."

Section 1B1.13 then sets forth several specific extraordinary and compelling reasons which may form—individually or in combination—the basis to reduce a sentence: (1) certain medical circumstances of the defendant; (2) age of

4

the defendant coupled with health issues; (3) certain family circumstances of the defendant; (4) whether the defendant was a victim of sexual or physical abuse while in custody; (5) other circumstances (or a combination of circumstances) "similar in gravity" to (1)–(4);[2] and (6) defendant received an unusually long sentence.

And although the court must consider "extraordinary and compelling" reasons and the relevant § 3553(a) factors, it may deny compassionate release on any of these bases:

> First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. Second, the court must evaluate whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case." Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.

---

[2] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity . . . ." Supplement to USSG App. C, amend. 814, p. 207 (Nov. 1, 2023). Under § 1B1.13(b)(5), the court retains substantial discretion to determine what constitutes extraordinary and compelling reasons. *United States v. Gudgel*, 2024 WL 729959, at *2 (D. Idaho Feb. 22, 2024) (stating that under the "other reasons" provision of § 1B1.13(b)(5), "district courts have wide discretion in evaluating whether a defendant's circumstances are extraordinary and compelling enough to justify a sentence reduction"); *United States v. Donato*, 2024 WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024) (same); *United States v. Courtway*, 2023 WL 8772931, at *7 (S.D. Cal. Dec. 19, 2023) (same).

*Wright*, 46 F.4th at 945 (internal citations, emphasis, and footnote omitted). Thus, a district court may deny a compassionate release motion based solely on a defendant's failure to show an "extraordinary and compelling" reason for release. "[A] district court that properly denies compassionate release need not evaluate each step" in the "sequential step-by-step analysis" required by 18 U.S.C. § 3582(c)(1)(A). *Keller*, 2 F.4th at 1284 (emphasis omitted). "Such a reading is compelled by the structure of the compassionate release statute, which treats its requirements as conjunctive." *Wright*, 46 F.4th at 947 (citing *id.*). "This structure necessarily dictates that a court may deny compassionate release at *any* stage of the § 3582(c)(1)(A) pipeline." *Id*. (emphasis added).

Finally, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . . However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances" in determining whether and to what extent to reduce a term of incarceration. USSG § 1B1.13(d).

### B. Defendant Has Exhausted Administrative Remedies

The government asserts that Defendant has not exhausted administrative remedies; thus, the Motion should be denied as premature. ECF No. 85 at PageID.392–393. To satisfy 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement, a defendant must submit a request to the BOP (often, the prison

warden) that explains the basis for the relief sought and provides a proposed release plan.  *See* 28 C.F.R. § 571.61(a)(1)–(2); *see also United States v. McLean*, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (per curiam); *United States v. Burdette*, 2020 WL 6375535, at *2 (E.D. Mich. Oct. 30, 2020).  The exhaustion requirement in § 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced when properly invoked."  *Keller*, 2 F.4th at 1282.  In other words, if raised by the government in opposition to a motion for compassionate release, the exhaustion requirement must be enforced, but if the government does not raise the exhaustion requirement, it may be waived.

      The government asserts that although Defendant filed an administrative request for compassionate release in May 2020, he has not filed one since.  But in his reply, Defendant submitted a copy of correspondence to the warden dated June 5, 2024, requesting compassionate release.  *See* ECF No. 86-1.  Defendant further stated that the warden has not responded to his administrative request; thus, under 18 U.S.C. § 3582(c)(1)(A), it appears that Defendant has exhausted his administrative remedies.[3]

---

[3] Exercising its discretion, the court denies Defendant's request for the imposition of sanctions "for the patently false information [that he failed to exhaust administrative remedies] presented by the Government."  *See* ECF No. 86 at PageID.408.

**C.     Defendant Fails to Show an Extraordinary and Compelling Reason Warranting Early Release**

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release.  *See Wright*, 46 F.4th at 951; *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). He has not carried this burden.

### 1.     *Defendant's Medical Circumstances*

Section 1B1.13 provides that an extraordinary and compelling reason exists if Defendant suffers from a serious physical or medical condition or cognitive impairment "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility *and* from which he or she is not expected to recover."  USSG § 1B1.13(b)(1)(B) (emphasis added). In his Motion, Defendant claims that:

> he suffers from Hypertension, High Blood Pressure, Asthma, Anxiety Disorder, Major Depressive Disorder, and Post Traumatic Stress Disorder, in which cause degeneration [sic].  The relevant factor here is that a Doctor perceived Defendant's medical needs worthy of treatment and prescribed the following medications:

8

      1. Albuterol Inhaler, 2. Sertraline,[4] 3. Chlorthalidone,[5] 4. Fluoxetine,[6] and 5. Prozac.

ECF No. 78 at PageID.362.  As for the cognitive impairment, Defendant claims in his Motion that:

> the Defendant's medical conditions and medications significantly affects[sic] his daily activities as he is experiencing the following side effects and conditions: 1. Weakness and fatigue, 2. Drowsiness, 3. Dry Eyes, 4. Constipation,[sic]
>
> The medications are causing serious cognitive impairments as it substantially diminishes the ability of the defendant to provide selfcare within the environment of FCI Fort Dix.  As long as Defendant is being prescribed medications that is causing Cognitive Impairments he will never recover until he is completely off all medications.

*Id*. at PageID.363.

      Defendant's claims that he suffers from "Long COVID"[7] include an

---

[4]  Sertraline manages and treats major depressive disorder, obsessive-compulsive disorder, panic disorder, and post-traumatic stress disorder, among other things.  *See* National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK547689/ [https://perma.cc/7HY2-GMRE].

[5]  Chlorthalidone is used to treat hypertension.  *See* National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK553174/ [https://perma.cc/5SCA-JRRF].

[6]  Fluoxetine has received FDA approval to treat major depressive disorder.  *See* National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK459223/ [https://perma.cc/C4DH-SAMU].

[7]  According to the Centers for Disease Control, "Long COVID" consists of a "wide range of ongoing symptoms and conditions that can last weeks, months, or even years after COVID-19 illness."  *See* Long COVID Basics, https://www.cdc.gov/covid/long-term-effects/
(continued . . .)

explanation of the general long-term effects of COVID-19, such as damage to the lungs, heart, and brain, *see id.* at PageID.364–366, and that "due to his constant and repeated exposure to COVID-19," he is experiencing many symptoms, including excess phlegm and breathing problems.  *Id.* at PageID.366.  In addition, he asserts that he "is experiencing long term effects of COVID-19, such as shortness of breath, chronic fatigue, [d]epression and anxiety.  To date, he continues to suffer long term effect[sic] from COVID-19, his preexisting medical conditions, especially his mental disorders have been significantly aggravated by his previous infections."  *Id.* n.1.

         Defendant's motion fails for a simple reason—he submits no medical records or other medical evidence to support his claims.  That is, the court lacks any evidence that Defendant actually suffers from any of these ailments,[8] and if he does, whether these conditions "substantially diminish[]" his ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13(b)(1)(B).  And without such evidence, Defendant cannot meet his burden to prove an extraordinary and

---

?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html [https://perma.cc/B2LM-62DJ].

   [8] The sole exception is asthma:  Defendant's presentence report ("PSR") states that "defendant advised that he was diagnosed with asthma, and uses an Albuterol inhaler as needed (verified).  He is otherwise in good physical health and has no allergies."  ECF No. 45 (PSR ¶ 71).

10

compelling reason. *See United States v. DeFoggi*, 2023 WL 4112142, at *2 (8th Cir. June 22, 2023) (finding an "unverified list of his underlying medical conditions" insufficient to satisfy the defendant's burden) (unpublished); *United States v. Garza*, 2022 WL 16959210, at *1 (11th Cir. Nov. 16, 2022) (affirming a district court's denial of motion for compassionate release where the defendant provided no evidence that his medical conditions satisfied his burden of proof) (unpublished); *United States v. Brown*, 2023 WL 6147981, at *3 n.4 (S.D. Ohio Sept. 20, 2023) ("[T]he Court disregards Brown's alleged [medical] condition as an extraordinary and compelling circumstance absent verifiable medical records."); *United States v. Salazar-Valenzuela*, 2022 WL 16635330, at *2 (D. Ariz. Nov. 2, 2022) (finding that without medical records, a court is unable to make a finding of extraordinary and compelling reasons) (citing numerous cases); *United States v. Cooper*, 2020 WL 2064066, at *3 (D. Nev. Apr. 29, 2020) ("Cooper has not demonstrated that his medical situation presents extraordinary and compelling circumstances for compassionate release because he offers no records to support these diagnoses . . . ."). Further, although Defendant's motion references an "Affidavit of Steven Cramer," none is attached. *See* ECF No. 78 at PageID.366.

        Defendant also asserts, albeit as a factor under U.S.C. § 3553(a), that he "has served roughly 3 years of his sentence on lockdown due to the pandemic. This means that his sentence has been significantly more laborious

11

than that served by most inmates." *Id*. at PageID.371.  But Defendant has not shown that the hardships he faces at Fort Dix FCI differ significantly from any other BOP facility.  The BOP reports that as of October 9, 2024, of 3,781 inmates, 2,484 are fully inoculated, with one open case of COVID-19 and two COVID-related deaths.  *See* Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData [https://perma.cc/HB7F-UCVS].  This data does not paint as dire a picture as Defendant attempts to supply.

Without more, Defendant has failed to meet his burden that he has medical condition(s) that "substantially diminish" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  USSG § 1B1.13(b)(1)(B).

### 2. *Defendant's Family Circumstances*

Another "extraordinary and compelling reason" justifying compassionate release includes "incapacitation of the defendant's spouse . . . when the defendant would be the *only available* caregiver for the spouse . . . ."  USSG § 1B1.13(b)(3)(B) (emphasis added).  The Defendant bears the burden of demonstrating both that his spouse is incapacitated and that he is the only available caregiver for the spouse.  *See, e.g.*, *United States v. White*, 2023 WL 5510306, at *2 (E.D. Va. Aug. 24, 2023); *United States v. Garcia*, 2024 WL 2114311, at *1

12

(S.D. Tex. May 10, 2024); *United States v. Castro*, 2024 WL 1767602, at *4 (D.N.J. Apr. 24, 2024).  He fails to meet this burden.

Defendant asserts that in 2005 his wife suffered a brain hemorrhage, resulting in the need for a permanent "VP shunt"[9] to prevent hydrocephalus.  It causes her to be in intense pain and, consequently, she requires assistance in performing daily activities.  ECF No. 78 at PageID.367.  Defendant claims that since 2021 (when he entered incarceration), his wife's medical condition has "not been properly monitored."  Consequently, he is the only available caregiver for his wife, who is incapacitated and unable to care for herself.  *Id*.  He provides no other details as to his wife's location or how her needs are being met,[10] nor any medical evidence of her condition.  Defendant references an "Affidavit of Jasdine Cramer" but there is none attached to the Motion or Reply.

Even assuming—without deciding—that Defendant has shown that his wife is incapacitated, he has failed to show that he is the only available caregiver for her.  Indeed, Defendant mentions having, "unlike many inmates . . . a support system of family outside of prison who would help provide housing for him and financially support him.  Specifically, he will reside with his wife and

---

[9] A ventriculoperitoneal (VP) shunt is a cerebral shunt used to treat hydrocephalus by removing excess cerebrospinal fluid.  *See* National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK459351/ [https://perma.cc/GV4E-4BHF].

[10] Defendant's Reply mentions his children but no information is given as to their ages or how they manage their mother's purported incapacity.  *See* ECF No. 86 at PageID.411.

13

perform as her primary caregiver and work at a family business owned by his wife and sister." ECF No. 86 at PageID.412. The presentence report ("PSR"), submitted in June 2020, indicates that his wife is an opthalmic technician at Hawaii Vison Specialists, a clinic run by his wife's sister. ECF No. 45 (PSR ¶ 68). The PSR also provides that until his arrest in December 2018 for the instant offense, Defendant lived on the Big Island with his wife and their three children with his wife's family.

        Given the existence of these family members, and without further elaboration or medical evidence, he fails to meet his burden of proof that his wife is incapacitated and that he is her only available caregiver. *See Wright*, 46 F.4th at 951 (noting that it is defendant's burden to establish his eligibility for compassionate release); *United States v. Williams*, 2024 WL 3172729, at *2 (S.D. Cal. June 25, 2024) ("Because it is easy to simply allege the absence of other potential caregivers, Defendant must make 'a robust evidentiary showing that defendant is the only available caregiver.'") (citation omitted); *United States v. Cruz-Rivera*, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020) (denying compassionate release based on defendant's wife's medical condition where defendant's motion and supporting documents did not show his wife was "incapacitated due to her breast cancer or diabetes" and defendant had not shown he would be the only available caregiver).

### 3.   *Rehabilitation*

Defendant also argues that he has undergone significant rehabilitation while in custody, ECF No. 78 at PageID.361, and has taken advantage of programming, ECF No. 86 at PageID.411.  The court commends Defendant's efforts to better himself while incarcerated.  But, as set forth above, rehabilitation alone is not a basis to grant a motion for compassionate release.  USSG § 1B1.13(d).

Therefore, the court does not find an extraordinary and compelling reason justifying Defendant's compassionate release under § 3582(c)(1)(A)(i).

### D.   **The Section 3553(a) Factors Do Not Justify Compassionate Release**

Independent of whether Defendant has proven an extraordinary and compelling reason to justify a sentence reduction, the court would decline to reduce his sentence based on consideration of the relevant § 3553(a) factors.

Relevant § 3553(a) factors include, but are not limited to: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or

15

other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)–(2). And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

As for "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), Defendant was a large-scale methamphetamine trafficker in the State of Hawaii. At sentencing, he was held responsible for 5,795 grams of "ice" and 5,443 grams of generic methamphetamine. ECF No. 45 (PSR ¶ 35). As the court stated at sentencing:

> The defendant, there is no way to put this other than bluntly, was a large-scale methamphetamine trafficker on the Island of Hawaii and in the State of Hawaii. He's been held responsible for 5,790 grams, that is 5.7 kilograms of ice, and 5,400 grams of generic methamphetamine. It's a large, large amount of methamphetamine.

ECF No. 77 (transcript of 2/19/21 sentencing hearing) at PageID.342.

Further, Defendant has a prior felony drug-related record. He was convicted in 2009 of promoting dangerous drug 2 under Hawaii state law. ECF No. 45 (PSR ¶ 52). And he committed the instant offense while under parole for his first drug offense. *Id.* (PSR ¶ 55).

As to the "history and characteristics of the defendant," 18 U.S.C.

§ 3553(a)(1), Defendant reiterates his turbulent upbringing starting with his father leaving the family when Defendant was just three years old, ECF No. 86 at PageID.411, and turning his life around by reestablishing contact with his now-wife and eldest daughter.  *Id*.  But the court already knew these circumstances when sentencing Defendant.  As such, they cannot constitute extraordinary and compelling reasons justifying compassionate release.  *See United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021) ("[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence.").

Weighing all the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's efforts at rehabilitation, and the time remaining on Defendant's sentence,[11] the court determines that reducing his sentence would undermine the goals of sentencing set forth in § 3553(a)(2).  Even if Defendant had an "extraordinary and compelling reason" (which he does not), the court would not grant the Motion.

---

[11] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *Keller*, 2 F.4th at 1284; *United States v. Espinoza-Patino*, 2022 WL 16634865, at *1 (9th Cir. May 20, 2022) (unpublished); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020).  As stated, Defendant's projected release date is December 4, 2029; thus, he has a little over five years remaining on his sentence.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 78, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 1, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Cramer*, Cr. No. 19-00001 JMS-1, Order Denying Defendant's Motion for Compassionate Release, ECF No. 78